OPINION
{¶ 1} Defendant-appellant Chadd Burnside appeals from the denial by the Fairfield Municipal Court of his Motion to Suppress. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
{¶ 2} On July 28, 2001, appellant was arrested and charged with operating a motor vehicle under the influence of alcohol in violation of R.C. 4511.19(A)(1) and speeding in violation of R.C. 4511.21. While appellant refused to submit to a chemical breath test, appellant requested that a blood test be performed. For such reason, Trooper Ward of the Ohio State Highway Patrol, who stopped appellant, transported appellant to the Fairfield Medical Center. After appellant's blood was drawn by a technician at the medical center, the blood sample was mailed by Trooper Ward to the State Highway Patrol lab. Since the blood alcohol testing yielded a test result of .169 gram percent by weight of blood, appellant was also charged with operating a motor vehicle with a prohibited level of alcohol in violation of R.C. 4511.19(A)(2).
{¶ 3} Thereafter, appellant, on August 1, 2001, entered a plea of not guilty to all of the charges. On August 15, 2001, appellant filed a Motion to Suppress arguing, in part, that the State did not comply with the Ohio Department of Health Regulations regarding blood alcohol testing. A hearing on appellant's motion was held on October 12, 2001. After the trial court overruled his Motion to Suppress in part, holding that the State substantially complied with the Ohio Department of Health Regulations regarding blood alcohol testing, appellant, on December 4, 2001, entered a plea of no contest to operating a motor vehicle with a prohibited level of alcohol in violation of R.C. 4511.19(A)(2). The remaining charges were dismissed. The trial court, after finding appellant guilty, sentenced appellant to 60 days in jail and fined appellant $250.00. The trial court further ordered appellant to serve three days in jail and suspended the remaining 60 days of appellant's jail sentence on condition of two years good behavior.
{¶ 4} Appellant now raises the following assignment of error on appeal:
 {¶ 5} "THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION TO SUPPRESS REGARDING SUBSTANTIAL COMPLIANCE WITH THE OHIO DEPARTMENT OF HEALTH REGULATIONS REGARDING BLOOD ALCOHOL TESTING."
 I
{¶ 6} Appellant, in his sole assignment of error, challenges the trial court's denial of his Motion to Suppress. Appellant specifically contends that the trial court erred in holding that the State showed substantial compliance with the Ohio Department of Health regulations regarding blood alcohol testing since the State failed to establish (1) that a non-volatile antiseptic was used on appellant's skin prior to collecting the blood sample and (2) that a solid anticoagulant was used after appellant's blood sample was drawn. Appellate review of a decision on a motion to suppress is de novo.
{¶ 7} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are again the manifest weight of the evidence. State v. Fanning
(1982), 1 Ohio St.3d 19, 437 N.E.2d 583; State v. Klein (1991),73 Ohio App.3d 486, 597 N.E.2d 1141; State v. Guysinger (1993),86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v. Williams (1993),86 Ohio App.3d 37, 619 N.E.2d 1141, overruled on other grounds. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v.Curry (1994), 95 Ohio App.3d 93, 641 N.E.2d 1172; State v. Claytor
(1993), 85 Ohio App.3d 623, 620 N.E.2d 906.
{¶ 8} The State has the burden of proof to show that the test was administered in substantial compliance with the methods prescribed by the Director of Health of the State of Ohio. State v. Plummer (1986),22 Ohio St.3d 292, 294-295, 490 N.E.2d 902. Once the State has established substantial compliance with the administrative rules, the burden then shifts to the defendant to demonstrate that he would be prejudiced by anything less than literal compliance with the same.Plummer, supra.
{¶ 9} As is stated above, appellant maintains that the State failed to establish substantial compliance with Ohio Department of Health Regulations since the State failed to establish (1) that a non-volatile antiseptic was used on appellant's skin prior to collecting the blood sample and (2) that a solid anticoagulant was used after appellant's blood sample was drawn. O.A.C. 3701-53-05, which is captioned "Collection and Handling of Blood and Urine Specimens", provides, in relevant part, as follows:
 {¶ 10} (B) When collecting a blood sample, an aqueous solution of a non-volatile antiseptic shall be used on the skin. No alcohols shall be used as a skin antiseptic.
 {¶ 11} (C) Blood shall be drawn with a sterile dry needle into a vacuum container with a solid anticoagulant, or according to the laboratory protocol as written in the laboratory procedure manual based on the type of specimen being tested.
{¶ 12} At the suppression hearing on October 12, 2001, Marilyn Booze, the blood and alcohol technician and certified phlebotomist at Fairfield Medical Center who drew appellant's blood on July 28, 2001, testified as follows when asked whether she cleaned appellant's skin prior to drawing blood:
{¶ 13} A. Yes.
 {¶ 14} Q. What kind of solution did you use to clean that surface?
{¶ 15} A. Benadine.
{¶ 16} Q. Benadine?
{¶ 17} A. Um, hum.
{¶ 18} Q. Is that a non-alcoholic antiseptic solution?
{¶ 19} A. Yes, it is.
 {¶ 20} Q. Okay. And is that the type of solution that you're trained when doing a test for drug or alcohol?
{¶ 21} A. Yes.
{¶ 22} Transcript at 55-56. However, when questioned during cross-examination, Booze testified that she did not know what "a volatile antiseptic is as opposed to a non-volatile antiseptic." Transcript at 58. While Booze testified that a non-alcoholic solution was used to clean appellant's skin prior to the blood draw, as noted by appellant in his brief, "[s]ince the [Ohio Department of Health] regulations requireboth a non-volatile antiseptic and a non-alcoholic antiseptic, it must be assumed that non-volatile does not equate to non-alcoholic." In a similar case, this Court previously held that the State had failed to establish that it had substantially complied with O.A.C. 3701-53-05 when there was no testimony at the suppression hearing that the antiseptic used on the defendant's arm before blood was drawn did not contain alcohol. See City of Canton v. Hickman (April 15, 1991), Stark App. No. CA-8301.
{¶ 23} Based on the foregoing, we find that the State did not establish that a non-volatile antiseptic was used in obtaining appellant's blood specimen as required by O.A.C. 3701-53-05(B).
{¶ 24} As is stated above, appellant, in his sole assignment, also argues that the State did not substantially comply with O.A.C.3701-53-05(C) since there was no testimony presented at the suppression hearing that a solid anticoagulant was used. As is stated above, such section states, in relevant part, that "[b]lood shall be drawn with a sterile dry needle into a vacuum container with a solid anticoagulant". (Emphasis added). Upon our review of the record, we find that there was no testimony presented at the suppression hearing that a solid anticoagulant was used.
{¶ 25} Based on the foregoing, we find that the State failed to establish substantial compliance with the Ohio Department of Health regulations concerning blood alcohol testing, namely, O.A.C. 3701-53-05(B) and (C) and that, therefore, the trial court erred in denying appellant's Motion to Suppress.
{¶ 26} Appellant's sole assignment of error is, therefore, sustained.
{¶ 27} Accordingly, the judgment of the Fairfield Municipal Court is reversed and this matter is remanded for further proceedings.
By EDWARDS, J. HOFFMAN, P.J. and WISE, J. concur
 JUDGMENT ENTRY
{¶ 28} For the reasons stated in the Memorandum-Opinion on file, the judgment of the Fairfield County Municipal Court is reversed and remanded. Costs to appellee.